Your Honor, it's Carl Gunn appearing for Mr. Anorve-Verduzco. I see from the prior argument that I have some similar issues regarding modified categorical approach, so I think I'll jump straight to that, if that's okay with the Court. Obviously, I'll answer any questions about the other issue that the Court has. I'm going to try to reserve, if I can, two minutes for rebuttal. There's two reasons the government falls short under the modified categorical approach in my case. The modified categorical approach, to some extent, every case is a little different because every case has its different documents. The first problem is one that I guess existed in the prior case as well as a general problem, is the government has a problem of U.S. v. Vidal. How do you address that issue? The government in the previous case addressed the question posed by Judge Kleinfeld. He's pointed out that the later cases don't require the magic words that Vidal does, and indeed that the dissent in Vidal wrote the majority opinion in the other case. In Strickland. In Strickland. How are we to interpret that? There's two responses, Your Honor. And one of them is my second issue, that in this case, there's problems with the documents that raise questions about reliability anyway. And I do want to definitely get to that. But let me address your question first. Okay. First of all, I don't think it's the case that Vidal is not being followed anymore. I've actually cited, I believe, two cases in my brief, and I think there's been one or two since then, where courts, albeit this Court, albeit in unpleasant opinions, has relied on and cited the as-charged-in-the-information requirement of Vidal. Now, the Strickland case does not address that. I look back at the Strickland opinion, actually, while Judge Kleinfeld was asking his questions. Strickland has nothing to do with an information and how to tie an information to an abstract of judgment and what circumstances they can be tied. Strickland dealt with some very specific, case-specific circumstances about a docket sheet that has specific references in it about the defendant having to register as a sex offender, which the Court said made for no other possible conclusion than that he had pleaded to sex abuse. That's true. Is there any evidence in this case that there was an amendment? There is not, Your Honor, but I think with all due respect, that's the wrong question. The government has to establish that there wasn't an oral amendment. Okay. The government has to establish that the documents in this case show that the defendant pled guilty to the information without an oral amendment. That's the reason, I think, for the Vidal holding. The reason for the Vidal holding, which is never ñ neither Schnellenberger nor Strickland say anything about Vidal. If you're going to say they overruled it, it's totally sub silencio. I think there's some distinction. When a judgment says guilty of a particular statute, the statute includes both things that would be and things that would not be categorically violative. And all you know is that he pleaded to the statute. But where he pleads to a particular count, and you know that from a cognizable document, then you don't need as charge to tell you that he pleaded to the count because you have a cognizable document that says he pleaded to the count. But they knew the count he pleaded guilty to in Vidal. The problem in Vidal was whether that count, same count number, had been orally amended. The reason for Vidal is that California has this perhaps strange ñ I don't know how many other states have it ñ oral amendment procedure. So you don't know whether the count one was the same at the time the defendant pled guilty to it as it was when the complaint or information was written. That's why we have the rule in Vidal. And the rule in Vidal has not been overruled. It also has not been followed in a published case. There are four unpublished cases. That's correct. We don't know the facts, basically. That's correct. On the other hand, normally ñ I'm sorry. Morales-Perez is very distinguishable because it deals with a different code section, and there's no discussion of what constituted controlled substances. So I'm having trouble seeing where when we have a subsequent en banc decision, and mentally doesn't mention Vidal, but deals with the same issue, at least arguably so. But they don't deal with the same issue, Your Honor. You're saying the oral amendment issue? Yes. The Strickland case didn't talk at all about an information and a judgment. It talked about a docket sheet and things that docket sheet said about needing to register as aÖ What about Snellenberger? Snellenberger, all it talked about was we're going to use the minute order to identify which of two counts the defendant pled guilty to. You know, Kwong said an abstract of judgment is cognizable. And when I look at it here, let's see, if I'm looking at the right one, it says that the crime he was convicted of is possession of narcotic controlled substances for sale. That's in the supplemental authority letter, I believe. Correct, Your Honor? The Kwong case. I'm looking at page 007 of your excerpts of record. 007 of the excerpts of record. Am I looking at the right thing here? Appellant's excerpt of record. 007 of my excerpt of record is the abstract of judgment. Yes. Oh. You said Kwong, Your Honor? But the Kwong case. You're citing a case called Kwong? That's right. It says we can look at abstracts of judgment. From the supplemental. The Kwong case, though, is in the supplemental. Oh, I don't care where the Kwong case is. Right, right. It's a decision of this Court. It doesn't matter if it's in somebody's 28-K letter or if he missed it altogether. I don't think it was an en banc decision, first of all, so it couldn't overrule Vidal. Also, all Kwong was using the abstract for was to identify the statute of conviction, not the specific conduct the defendant pled guilty to. Oh, so you're saying don't follow Kwong. It's not good authority because you think it conflicts with Vidal. No, it's not authority. Also, though, it's not authority for what the issue is in this case. All Kwong says is you can use it to identify the statute of conviction, not that you can use it to identify the conduct that that statute encompasses. Here's my question. What is the question? Because we have, you know, information saying that Vidisco unlawfully possessed for sale and purchasing, you know, cocaine. Right. And then the abstract, possession of narcotic controlled substance for sale. You know, this is driving me to the point of, you know, just abstraction. Because it says he had cocaine, and then the other thing says he has cocaine, and we're arguing about whether he pleaded guilty to having cocaine. Well, that gets to my second issue, Your Honor, because interestingly, the second thing doesn't say he had cocaine. The second thing doesn't say anything at all about cocaine. The second thing says. You're talking about the abstract of judgment? Yes. You don't. Why would we separate them? Do we separate them only for some legal brain teaser? Because they can be read together. That's a practical, common-sense approach to read them together. The reason. Especially since there's no evidence that there was not an amendment. I empathize with your frustration, Your Honor. It's frustrating for us, too. The reason we don't set we – the reason we do what we do is because if we didn't do it this way, defense attorneys like me would be running into court saying, I want a trial on what happened 20 years ago, because that's not the way it went down, Judge. And so that's why we have these seemingly technical rules, because if you don't have these technical rules, we're going to have what way back they called mini-trials. Nobody believes in technical rules more than I. I'm a district court judge. Right. I understand. But. But listen. We have it here. We have the complaint. We have the information. Didn't he? Did he plead? Did Verdusco plead to this information or not? He pled guilty to this information. The question is whether he pled guilty to it and the word cocaine, or whether he pled guilty to a more general word like narcotic or controlled substance. Actually, it wouldn't matter, would it, because the for sale is good enough, even if it's not cocaine. No, it's not, because if it's just a controlled substance, the California controlled substance schedules include substances that the Federal controlled substances don't. If I could go back to Judge Mobley's question, I just want to take you through a few of the doubts that I think the difference between these documents raises. All right. Why did the clerk put narc, which presumably means narcotics, instead of cocaine? What words got used by the lawyers and the judge at the time of the plea? Cocaine or narcotic or controlled substance? What words got used by the defendant at the time of the plea? How did the lawyers and the defendants and the judge use whatever words they used? Here's the way it happens at the trial court level. If someone has an, and maybe it's different than state law. That's the problem. If someone has an information, that person is pleading to an information, and he's pleading to whatever count in the information the agreement has been reached on. And so if the count of the information charges to cocaine, then doesn't the abstract of judgment, to the extent that there might be an ambiguity, require you to look back at the information to which you were pleading to give clarity to the abstract of judgment? In state court, no, because we have the oral amendment process. And in fact, Judge Gutierrez, who was the judge in this case and also the judge in the other case, recognized, and when we get to the other case we'll talk about that, that things get, quote, amended on the fly, unquote, in state court. They don't do it as carefully and as formally and as nicely, Your Honor, as you do and they do in federal district court. That's the problem. That's why we have the rule of Vidal, at least for California cases. What the government really needed to do in this case was offer the guilty plea transcript. That's a matter of fact. You're in my mind, because that's exactly what I was going to ask. And, Your Honor, there's another issue in this case, as you know, because they're now trying to do that after the fact through what they call judicial notice. And another issue, Your Honors, they're going to have to reach is whether you're going to let them put that guilty plea transcript into evidence. And I do want to just quickly address that, because the answer to that is no, you shouldn't let them put it into evidence here by judicial notice. And two, when you remand, you should remand with a limited remand on the prior record and not let them supplement the record on remand. There's two reasons for that. And I've given you some authority in my response to the judicial notice motion, but I just want to remind you of some of it. First of all, the authority is quite clear that the general rule is you don't let the government make up for something on appeal with judicial notice that they didn't do in the district court. They're responsible, held responsible for what they did or didn't do in the district court, just the way us defendants are all the time. Second, there's a case I've cited in my response, I believe it's Esparza, that says in circumstances almost identically like this, where the issue is fully laid out for the government in the original sentencing and it was crystal clear that there were issues about whether this abstract of judgment was going to be accepted and it was being challenged and so on and so forth, they should have put the guilty plea transcript in there. And when they didn't, they don't get to do it on remand. You know, with all respect, you're a fine advocate and I get your point, but this has really catched the constable. I mean, if we send this back and the government has a document that absolutely, absolutely answers this ridiculous charade we have to deal with with Taylor all the time, and you say, no, you can't show that document because you didn't do it the first time. Isn't that absurd? I am going to be litigating that document on remand. I understand that, but I'm simply saying that if we send this back, it doesn't make more sense to send it on an open record. Well, all I know is that in a case that's almost identical to this, the case I cite in my response, Espinoza-Morales, you didn't, and you gave very good reasons for not, and they do it to us defendants all the time. So I guess my mother used to say, what's sauce for the goose is actually the hander. There you go. I know about that goose. And there's a Ninth Circuit case from your honors, and it's really the only one where there wasn't some excuse for the government not having done it before. I understand. Thank you very much. Let's hear from the government. Good morning. John Claude Andre on behalf of the United States. Andre, why didn't the government in the first instance just submit the transcript showing what this guy pleaded to? We didn't have it, Your Honor. Why didn't you get it? Well, yeah. How could you not have been able to get it? You're the government. Well, I'll answer it in the slightly circuitous way with the Court's indulgence. One of the reasons why the government cares so much about the categorical approach, which given the way these arguments are shaping up, I imagine we'll discuss in the next case where we have a full 20 minutes to do so. But one of the reasons why we care so much about the categorical approach is that it is difficult to get State court records or a full set. It's not that hard, and it's a whole lot easier for you than it is for defendants. I get kind of annoyed with the government always counting on us to save their bacon when they do a sloppy job and defendants are held feet to the fire all the time, and it's so much easier. You get a call from a Federal government office, everybody complies. They get a phone call from a defense attorney's office, they blow them off. Judge Kleinfeld, I can't speak to whether it is more difficult for the defense to get these records, although typically the defense is quite successful. I can. I never did prosecute, but I sure did defense. They were scared not to talk to the assistant DAs. They weren't scared not to talk to me. At least in our district, and maybe it's because it's a big public defender's office with very smart lawyers and lots of investigators, they do have a lot of success. But I do want to just, I guess, refute the proposition that it's easy for us to get the complete record, and namely the changes of plea transcripts. So when I get one of these cases, the first thing that I get is the A file from the And you get it. The problem in California is that with most guilty pleas, the guilty plea transcript is not made. The court reporter takes notes. But in this case it was. So why didn't somebody get it at the first instance? Because it was made at my request after this case went up on appeal. Because it was not prepared contemporaneously with the guilty plea, because that's the standard practice. But my point is that if you were able to get it when you got it, you could have gotten it earlier. That's my point. And I agree wholeheartedly with Judge Kleinfeld. You can get it. I don't know Federal prosecutors who can't get anything that they want through, you know, through the subpoena power or whatever devices that are available to them under the rules. No. And I won't disagree with you on that point, Judge Marley, or you, Judge Kleinfeld. It's simply that it does take time. It is not just a matter of sending a case agent over to the State court to pull the file. And so in many cases, we don't get the guilty plea transcript, particularly in cases that are moving fast towards a guilty plea, like these immigration cases. Typically, they start off as fast tracks. Then the defendant rejects it because they want to litigate this particular issue, for example. But the case is still cascading towards a quick guilty plea. But counsel, the government bears the burden of proof in a criminal case to prove it beyond a reasonable doubt. That's a hard thing to do. You go through all kinds of exercises to get that. Isn't your colleague on the defense side correct that, you know, you have a chance to make your record here. If you didn't make your record, for example, in, for example, proving an element of a particular crime, we'd have to reverse it. You may have had the document in your briefcase, but if it didn't get submitted and it's not on the record and the element isn't proven, then we have to reverse it. Why is this any different? Why isn't he correct that when you go back, you're stuck with what you did? This is not a jeopardy regime, to talk at the general level. But moreover. You're not talking about the television show. No. Well, it's not that either. But it's not a jeopardy regime. The district court's obligation is to get the guidelines calculation right. And if this Court remands this case, this Court is saying that the Court is uncertain as to where the district court got that guidelines calculation right. If there's information before the district court that sheds light on what the proper guideline calculation is, I don't see how a district court can turn a blind eye to it under this Court's en banc decision in Matthews or under Pepper. I mean, certainly this Court does have some authority to issue limited remands, but in the context in which the Court does so, it's to deal with restitution, a supervised release condition, some component of the sentence that is independent. We're not talking about that here. And before I move on to the modified categorical approach, I guess I do want to address Mr. Gunn's assertion and reliance on Espinoza-Morales that this case is almost just like it. If you look closely at Espinoza-Morales, which is the case he relied most principally on for the proposition that we shouldn't get to put this document back before the district court on any remand, the key in that case was this Court said that government has never proffered what it might want to introduce, not on its brief, not in judicial notice request, not at oral argument. We've done that here. We did it before the oral argument. I think that takes this case squarely out of Espinoza-Morales, and if there is a remand in an oral review, so. Let's suppose hypothetically that we do not, I think you – I think the way you put it was take judicial notice of the document that was not properly in the record before the district court. And let's say you don't have that. In that case, what is your response to the argument that because charges can be amended orally at the guilty plea hearing, we don't know what this man was convicted of? I think the problem really turns on what the government's – and it's a burden that we embrace – what the government's burden is when proving up a sentencing enhancement under the modified categorical approach. Mr. Gunn wants to elevate the standard seemingly to something – I asked you a little more specific question. Yes, Judge Klinefeld. We think that Vidal's statement as to – Vidal's as-charged requirement was dicta in that case, was – Let's suppose it's holding. We have a case called Bauerpind and Ambach that defines holding very broadly. A little – from my point of view, it might be excessively broadly, but it's binding law. So let's assume that what Vidal says is holding. And let's assume that Strickland does not in so many words say that that holding is overruled. Then what? Well, I don't think we need to go to Strickland, because Snellenberger, which is a subsequent Ambach case, certainly relied on the exact same set of documents that we have here, a State charging instrument that narrowed the charge and a proof of judgment or conviction to that charge without the limiting language. And lest there be any doubt, Ramirez v. El Pondo, Snyder, the Oregon case that we cited in our briefs, in fact, even the Ambach's most – the Ambach court's most recent decision in Aguila Montes de Oca again recognized that you can have a charging instrument that narrows a charge and some proof that the defendant was convicted of that, and that that is enough to satisfy the standard applicable here, which this Court has called in some circumstances. I think the issue that your adversary raises is he says that the instrument reflecting the conviction may say that he was convicted of violating count 1, but if it doesn't say as charged, there could have been an oral agreement that what he was pleading to was not as charged, rather it was something narrower and outside the Federal set. And what all the cases that I've been discussing show is that the as-charged language only kicks in when there is some indication of ambiguity in the record before the sentencing court. So in the case of Vidal, it was the fact that there was a notation that it was a People v. West plea. In Fregosa, it was the fact that there was actually an as-charged box. For whatever reason, I think it was San Bernardino County, that county actually has a Pleads as Charged line and a little box there. And it was unchecked. So it raised an ambiguity. But in Los Angeles County, or at least in this particular case, this was Los Angeles County, they don't have that box, so that ambiguity isn't existing in the record. There is no indication in the two documents. I'm putting aside, I'm ignoring the judicial notice request for the purpose of this discussion right now. There is no indication that there was a People v. West plea. And that's enough to satisfy the standard under Snellenberger and under Strickland and under this Court's other cases. It's basically clear and convincing. It's not that the government has to unequivocally demonstrate or prove beyond a reasonable doubt that the defendant pleaded to the charge listed in the narrowing charging instrument. That's just not required. Now, if the defense wants to come in and create that ambiguity of records, they can do that, and then the government's burden would go up. And that's probably when we would drill down and get the change of plea transcript a little more quickly. But based on this record, ever since Vidal, we now have two, arguably three, en banc decisions that have relied on the same universe of documents we have here, and then there are at least three paneled, published panel decisions that have done so. And so I think the way to reconcile Vidal with this case is because there's no ambiguity in the existing record, then we're fine. The government's satisfied. Kennedy. If we view this case as being substantially on all fours with Snellenberger, your view would be that Vidal is distinguishable on its facts, if not its rhetoric. Yes, exactly. That's exactly correct. I see that my time is almost up. Yep. Unless the Court has further questions about it. Any questions from colleagues? I think we used up all of your time, and you've done an excellent job. I think we have your points. And you're going to give it to us again in the next case, right, both of you? Is that the deal? We're back to the same deal. We're back to the same deal. Okay. Well, let's then submit the case of United States v. Honoré Verdusco, and we'll continue on into the next chapter, which is United States v. José David Leal Vega. I guess we're going to hear from, this time, the government is appealing, right? Yes, Your Honor. Jean-Claude André again on behalf of the United States.
judges: Marbley, Kleinfeld, Smith